The next case this morning is 5-230523, People v. Woolfolk. Arguing for the appellant is Omer Jaleel. Arguing for the appellee is Ivan Taylor Jr. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Okay, welcome again. To the proceedings pending before this court. Mr. Jaleel, you represent Mr. Woolfolk? Yes, your honor. Are you ready to proceed? I am, your honor. Okay, you may do so. Thank you, your honor. Mr. Taylor Jr., honorable justices. May it please the court. My name is Omer Jaleel and I represent Michelle Beer, who seeks, I'm sorry, Melvin Woolfolk, who seeks reversal of The trial court's denial of this joint motion to suppress. The trial court erred in granting the joint motion for several reasons. 1st, the arresting officer lacked probable cause to search the vehicle. 2nd, even if probable cause existed to search the vehicle, it did not extend to the plastic mailing envelope. 3rd, the officer's unlawful frisk of Mr. Woolfolk turned the terry staff into a full-blown arrest, requiring probable cause, which the officer did not possess. And finally, the arresting officer improperly extended the traffic staff to conduct a drug interdiction investigation. Your honors, would I be able to adopt my argument on the 1st, 2 matters from Ms. Beards, or would you like me to restate those? No, we can adopt it. If you would like to adopt the arguments made and the transcription of those arguments into this appeal, you may do that. Please, your honor, if I could adopt my arguments related to the probable cause issues on the searching the vehicle and the envelope, and I'll focus my arguments on the final 2 with Mr. Mr. Woolfolk regarding the unlawful frisk and the improper extension of the traffic staff. All right, do you have any objection justice? No objection justice more. Any objection no objection. Okay, Mr. Jalil, I would only caution you that we may. Have some questions related to those prior arguments. Of course, closing our possibility of doing that. Of course, your honor, the, the record is unquestionably here that. After the officer ordered Mr. Wilford out of the vehicle, he conducted a frisk of him on the, on the way back to Mr. on the way back to the on the way back to the police vehicle. The officer asked Mr. Wolf for how much money he had in his pocket. He then told him to put his hands up in the air. And the officer physically went into Mr. will for its pocket and remove cash money from there. This unlawful frisk violated. Mr. will for 4th amendment rights, a Terry for us doesn't automatically come from a Terry style. The sole purpose of a Terry for us is for officer safety here. There was. The record was entirely devoid of any testimony that the frisk was related to. The safety of the officer. The officer knew right away what was in Mr. will for pocket. He knew that it was money. He knew that there was and then he continued to. Go into his pocket that unlawful for us transform this encounter from. Investigatory into a full blown arrest and at that time, the officer needed probable cause and probable cause was entirely lacking at that point. The only thing the officer observed, but at that point was a minor speeding violation. And small cannabis and the virtue container, none of those. 3 factors gave rise to probable cause to arrest. Redmond has stated that smell of unreasonable cannabis. Uh, the smell of cannabis, the legal use and possession of cannabis in and of itself is not sufficient grounds for a probable cause and the virtue container as we discuss in the. Prior arguments, it was not. It was not a basis to search the vehicle. I did not see in the record where the state. Ever contested the. Conceal ability, if you will, of the container, or it's. The fact that it was not in compliance with Illinois law. Is there anything in the record that says whether this container was, or was not in compliance with Illinois law. Other than the officer's testimony that it needed to have its original seal in place. That was the only, but that's not the law. That's exactly that's not the law, but that would be the only thing that I could even remotely point to that would state that. Okay, but as it seems to me that there was no proof as to this. The nature of the container, or it's the fact as to whether it complied with the statute. No evidence was put on. Other than that, it was the officer operating the assumption that was, it was legally purchased at a dispensary. That would be the extent of it. 1 of the questions I had on the accessibility argument is whether the state has forfeited this argument by failing to raise it. In the trial court below, I would say, yes, they could have forfeited it. I think they could potentially make the argument that it never really became fully an issue and therefore they didn't waive it. But I think the central crux of of why this officer decided to pull him over was based upon a non existent violation of Illinois law. And I think that is a major factor in this case, especially when this police officer was allowed to testify extensively about his drug interdiction training, all the hours that he had, he was able to get into this proxemics business based upon his drug interdiction training. You didn't object to that during the motion to suppress. I don't believe that the trial counsel objected to the. In fact, I found it very interesting that trial counsel did not object to the drug interdiction expertise at the motion to dismiss, but did object during trial and the objection was sustained. And so a lot of this opinion testimony did not come in during the trial.  What do we do with that? The fact that there was an objection made and in 1 hearing and not an objection in this motion to suppress. Um, well, your honor, I believe you, your honors would be able to take the entire record as a whole to make your determination. On as Dean over review as to whether the trial court made an error in denying the motion to or denying the motion to suppress I didn't see I didn't see in the trial record where the trial counsel renewed the motion to suppress during the trial. So, it seems that we're left with the original motion and limine. I think the, I think your honors would be able to look at the facts that were reduced from the trial as well. I don't believe, though, that there is relevant to the issues as hand as opposed versus the testimony at the motion to suppress. Um, you know, the, the testimony in general was essentially the same as far as, like, the, how this traffic stop came about. Um, there were certainly less details given in the trial testimony based upon your honors observation. Um, but I don't think he's saying that the, that it was improper to pull over. Uh, Mr. Wolfock. The stop itself, the initial stop for the speeding violation. Right. Right. I mean, is it improper legally speaking. No, the United States Supreme Court has held pretextual stops is not a basis. Um, and Illinois, you could be technically pulled over for going 1 mile an hour over the speed limit. Um, you know, obviously, there's going to be issues as guilt, um, on it, but whether the officer could pull Mr. Wilford for going 1 mile an hour over the speed limit. Unfortunately, I do believe that he could do that as as the current state of the law is, but it did not allow him to conduct. An awful Terry frisk on him, which certainly occurred in this case, and it also did not allow the police officer to unreasonably delay the traffic stop, which happened in this case. The officer help me care. I want to care what is your characterization of the unreasonableness of the delay and stop. Well, your honor almost immediately tells. Mr. Wilford that he's getting a warning ticket, but he doesn't follow up on this at all. He what he does is conduct a drug interdiction drug drug interdiction investigation to write a warning ticket. There was no requirement for the officer to know about the relationship status between Mr. Wilford and Miss beard. There was no reason for him to be so insistent on seeing the rental agreement. There was no allegations or even reasonable suspicion that this rental was unlawful or this rental vehicle was stolen. It was all part of his drug interdiction training. He testified that he wants to. Stop people to talk to them and ask them questions and that's exactly what he was doing. He was trying to do this as for as long as he possibly could again. That's the reason why he asked for this rental agreement. There was no point in asking for a rental agreement and then he immediately. Asked for a canine to arrive seconds later. He tells the tells dispatches he's about to conduct a probable probable cause search. He doesn't do that. He takes Mr. Wilford out of the vehicle tells Miss beer to stay in the vehicle. He conducts an unlawful frisk on him. He takes him back into the car and he doesn't start on the. I'm writing him a ticket. He's now asking him other questions again about their relationship status. What they're doing about the about the purchase of the of the car. And then, you know, a good 34 minutes into him. Sitting into the vehicle is when they finally get into his driver's license status and he starts putting things into the officers are putting things into the computer. The officer specifically tells him I'm not the regular police and he testifies. I'm not out there looking for traffic violations. If somebody rips by me at 100 miles an hour. I'm not stopping them because that's not what drug traffickers do. I'm looking for people who fit this drug trafficking profile. And that's what he does. He pulls over. He doesn't even pull them over right away. He follows behind them for a little while gets up next to their vehicle to look inside their vehicle and then he pulls them over. If he was pulling them over for a speeding violation. What difference does it make? Who's driving that vehicle? The only sole purpose to do that is to conduct a drug interdiction investigation. And, you know, he tells Mr. Wilford, I'm not the regular police. I'm not here looking for drugs, looking for large amounts of drugs, large amounts of cash. I don't really care throughout the whole process. I'll give you a warning ticket for this. Oh, your license may be bad and I don't know it. Don't worry about it. I see the virtue container. Don't worry about it because that's not what he's after. He's after to conduct a drug interdiction. And he continues on this path throughout the whole course. This whole interaction could have been minutes long, but it wasn't because he kept on going and going and looking for things and when he didn't even when he and he didn't find them, that's that's what ultimately it is. The the things that he stated were grounds for probable cause the inconsistencies on their destination. Redmond says that's not a violation. Him driving a rental vehicle, you know, not a basis, you know, and then, you know, Redmond, you know, specifically talks about all the things that Redmond did, you know, the that Redmond pulled over the vehicle correctly that he pulled over. He rolled down the window right away. He was answering the questions. All the same things happened here. Mr. Wilford was able to properly pull over his vehicle. No testimony about him having issues pulling over the vehicle. There was no testimony about Mr. Wilford delaying and pulling over the vehicle. There's no testimony and Mr. Wilford not rolling down the window. In fact, the first thing is Mr. Wilford jokes to him about how quickly he came up on me that he didn't see him get him out of the vehicle. And that cuts against the officer's testimony that he saw nervous, nervous people aren't joking around with the police officers like Mr. Wilford was doing here. Um, the difference, though, between this case and Redmond that Redmond clearly references is the fact that you have a jar of cannabis in the council. I mean, Redmond clearly says that the individual's possession of cannabis is not immune from the Control Act's general prohibition against the possession of cannabis if it's in a space that's in the compartment or being transported illegally. And Your Honor, again, I would reiterate that I don't believe that this was inaccessible, that this was accessible cannabis, um, you know, based upon that there was no way to um, based upon that if this was regarded as accessible cannabis, it would be virtually impossible to transport cannabis. But I think. Well, I don't disagree with you that there's 1 section of the vehicle code that it's, it would be impossible to transport any cannabis under the vehicle code. Um, no driver may possess cannabis within any area of any motor vehicle upon a highway except in a sealed, odor-proof, child-resistant, child-resistant cannabis containment. I don't know how you, how you do that. Exactly, Your Honor, and I, and the general, at that point, the general prohibition against prosecution for possessing cannabis would be gone. There would be no way to get cannabis to even to your house. There would be no way to transport cannabis from your house to a friend's house. You, unless you were. I don't think this issue was raised at the trial court level, was it? It wasn't, Your Honor, but I believe that Your Honor should be able to undertake this as a de novo review, that this issue shouldn't be deemed to be forfeited because it's a constitutional issue that both co-defendants would be able to raise in a post-conviction petition. And for judicial expediency, I believe, Your Honor, the record is fully developed on these issues, and it would certainly fall under a proper de novo review here. Okay, your time at this point has expired. Let me ask, Justice Shuler, any questions? Not at this time. Justice Moore? Questions. Okay, Mr. Jalil, you'll have a few minutes again after Mr. Taylor has argued for the state. Thank you, Your Honor. Mr. Taylor? Thank you, Your Honors. Good morning. Good morning, counsel. My name is Ivan L. Taylor, Jr. Arguing on behalf of the state in this case. To start with, let's start with the issue that the defendant brings up regarding the search of defendant Woolfolk's pockets. He claims that the only purpose of any type of pat-down searching is for officer safety. And people don't disagree with that notion, but that is what's happening in this case. During the course of this traffic stop, the officer had asked defendant Woolfolk to step out of the vehicle and was going to lead him towards his own vehicle to conduct more questioning as well as run his license for, and also potential warrants. During, as they're moving towards the vehicle, you can hear on the video that defendants tells officers, oh, I have $3,200 in my pocket. And that's when the officer takes the time to check to make sure that what's in his pocket is just cash. As since the officer was going to put defendant in a very close proximity to him in his own vehicle, he needs to ensure that there's no potential weapons or anything dangerous. Even ask Woolfolk, oh, is it just cash in pocket or is there anything sharpened there as well? Once officer verifies the defense claims that it was just cash in his pocket, he puts it back and he continues on with the traffic stop. He has the defendant hold up his hands. And he's out on the highway holding his hands up while he's being patted down. You don't think that a reasonably objective person would consider that he's in custody at that point? Well, he was already, he's already being seized for memory when he was pulled over. Like he's part of a traffic stop. He's not more seized than he was before. So, at that point, he was already seized when the traffic stop was initiated. But for 4th Amendment purposes, you can see that, that he was seized and subject to, how about custody? Was he in custody? At that point, he was not arrested.  I didn't ask arrested. I asked whether he was in custody. Well, your honors. Was he free to leave? Oh, at that point, no, he's not. He was not free to leave because he was still part of traffic stop. So, at that, because they're custody, then he was in custody. Because as the defendant already conceded that, this was a valid traffic stop. He was speeding on the interstate and was pulled over for speeding. And during, I'm sorry, you were going to ask a question? I was going to say there's a difference between being stopped for a minor violation and being in full custody for the purpose of Miranda. Next question to you is, if he's in custody, why wasn't Miranda given to him in the car? Well, your honor, I would say that the defendant was claiming that he was, Miranda was violated. So, it's not an issue that we need to guide at this point. So, you're claiming forfeiture? Yes, your honor. It's an issue that was never brought up until your question just now. Okay. That's why the people are arguing that there was no issue with the minor search that the officer did when removing the money from the defendant's pocket and returned it to him. With regards to defendant's arguments with the extension of the traffic stop, as pointed out in brief, the defendant never presented this argument to the trial court at any point in time. It was only presented for the first time on appeal. Additionally, the defendant has never argued for plain air review of a violation of his rights regarding extension of a traffic stop. He has fully forfeited this particular claim, and there's no basis for his court to even consider it anymore. Be that as it may, even though the defendant has forfeited any review of his claim regarding the extension of the traffic stop, the traffic stop was not impermissibly extended. In my case law, it's very clear that during the course of a traffic stop, the officer may ask the driver to exit the vehicle. He may ask, have the driver sit in his own vehicle. He may ask questions to the driver. He may check the driver's license to ensure that it's valid. He may check potential for warrants as well. Like, none of the actions that the deputy columnist took during the course of the traffic stop were impermissible. They're all valid things that could occur during the course of a traffic stop, thus they cannot impermissibly extend the extent of the traffic stop itself. Furthermore, case law is also quite clear that during a traffic stop, if an officer has probable cause that another crime is being committed, a traffic stop may be extended due to that probable cause. And as was quite clear in this situation, when Deputy Collins first came to the vehicle, he smelled the odor of raw cannabis. He asked the passengers- That's not, that wasn't clear to me that before he brought Mr. Wolf back, that he testified he smelled the odor of raw cannabis. It seemed to me that the odor of raw cannabis came when he said on the video to his other officer, oh, by the way, it reeks of cannabis. That's the first time I heard that he ever said that. Was there a different time? My recollection of the video is that when he first approached the vehicle and was speaking through the passenger side window, he mentioned that he smelled cannabis to them. That's my recollection of the video. He asked about it and that's when I believe it was Wolf Oak was the first one to lift and show the glass jar container of the cannabis. I stand corrected. Yes, that's why I believe what occurred within the video. And it was at that point that he had probable cause. A defendant has repeatedly stated that how Redmond was general about cannabis, but that's not true. If you look at Redmond on paragraph 54, it's very explicit where it states that the order of burnt cannabis standing alone is insufficient to provide probable cause to search the vehicle. And it's very explicit that the court was looking solely at burnt cannabis within Redmond. The law regarding raw cannabis, especially in this situation, raw cannabis that's being improperly transported and violation of the traffic code, that was not looked at within Redmond. I believe there's even a footnote within Redmond, which specifies that to look to his decision in Molina with regards to the transportation of cannabis and with regards to section 11-502.15. So Redmond was solely- Mr. Taylor, isn't it if you have burnt cannabis, you have evidence that there's been use? Not necessarily. If you have- I'm sorry, I'll say not necessarily. I mean, the trial court, the Supreme Court's issue with Redmond was that because the consumption of cannabis is legal in some instances, it's also within for adults in certain situations, the scent of burnt cannabis can linger upon an individual well past the point where they've finished consuming it. So if someone has already previously smoked cannabis, sometime later they get their vehicle to drive, there's no necessary evidence of the burnt cannabis within the vehicle, it's just on their person, just the scent of it, that's the odor. Right, so you have- but you have evidence that somebody at some time has used it, right? Yeah, the odor itself would be the evidence, but there's no, there's not necessarily, there's not necessarily ashes within the vehicle. Okay, but if you have the smell of raw cannabis without any paraphernalia, without any smell of burnt cannabis, you have no proof of use, do you? Well, the thing about raw cannabis is that that portion of Stout's holding was not touched by Redmond. Well, Stout was overturned. Well, according to the court in Redmond, they only overturned a portion of Stout with regards to burnt cannabis, not all of it. Okay, but answer my question. My question is, when you smell raw cannabis, there's no evidence of use. There's no paraphernalia, there's nothing, except somebody might have opened that jar and resealed it. Well, they closed it, but things though, what's, just in case it seems to be assuming that just merely opening up for a moment and closing it is going to have the sense of raw cannabis linger. I'm assuming that I'm, I don't know that much about cannabis, but I'm assuming that if you open up a jar and you look to see if what you ordered from the dispensary is what you got, that there's going to be some odor of cannabis in the car. Because I'm told it's pretty pungent and that you can reseal it. There's nothing about, there's no law against opening it and resealing it, is there? If you're in the parking lot of the dispensary, you can open it up, you can look, you're not on a highway, you can reseal it. There's no law against that. The issue here is that what we're looking at is probable cause of a violation. I know, but I'm asking about the smell. I know what you want to talk about. I see my time has ended, may I answer your question? Yes. Let me restate my question. Isn't it true you can have the smell of raw cannabis and not violate any statute? Yes, that is possible. Okay. Unfortunately, that's not the situation in this case. How do you know? Because that statute is not only in regards to the container itself that's odor-proof and sealed or resealable, but also the accessibility of the item. Nobody put on any evidence in this case that the container wasn't odor-proof. The state never put any evidence on in that regard? Well, as this was regarding a motion to dismiss, it really is up to the defendant, has the burden of demonstrating. I know, but in this case, the defendant submitted the police reports and the court found that the burden shifted and the state assumed the burden and went forward with the police officer. So my point is that the burden shifted, no objection from the state, and there was no proof that the container was not resealable. Okay. Isn't that true? There was no evidence regarding the quality of the container itself. What we have is just the officer's own observation and smelling of selling the scent of raw cannabis and seeing the container in the console. Right. So with regards to the actual quality of the container, there's no specific evidence as to that presented below. So we can't assume that it did or did not comply with the statute. All we know is that there was a dispensary container that was in the console. If you want to focus on, of regards to that portion of the statute regarding the quality of the container, whether it was order-proof, child-proof, sealable, that's one aspect, but also the aspect of the accessibility. The defendant was arguing that the container is, to be accessible, has to be able to be consumed, or if you believe that's accessible in the console, that means it can be nowhere within the vehicle, which is frankly ludicrous in both aspects. Accessibility is very simple. That is what just demonstrated in this case. My defendant was able to reach down in the center console, barely extend his arm and pick up the container without any issue. And then they'll pass over to the passenger. That is accessible. It's very neat. Statutes are given in plain and ordinary meaning. And that is what accessibility means in this situation. Is it within reach of the driver and passenger? It was. It's accessible. I'm not- Is that what the statute says, that it can't be within the reach of the passenger or the driver? No, it says it can't be accessible. But you give the words in plain and ordinary meaning. And you also look at the context of the language of the entire statute itself. So what would your definition, I've asked this of everyone else, what would your definition be of accessible then? Is it accessible in the back seat? I would say no, it's not accessible in the back seat. Not to the driver or passenger in the front seat. No. If there was a passenger in the back seat, then yes, it'd be accessible to them. But in this situation, we only have a front seat passenger and a driver. So a sealed container in the back seat would not be accessible. So we kind of have a fluid definition here. It's all dependent on the circumstances. That is correct, Your Honor, because it says that it can't be accessible to the driver or a passenger, but passengers are not always in the front passenger seat. They can be a passenger in the back seat and a driver in the front. It just depends on the situation we find ourselves. So if we accept your definition of accessibility, we have a class A misdemeanor, correct? Correct, Your Honors. So what gives the officer the right to search an envelope found underneath the carpet? Because the issue with this misdemeanor is the improper transportation of canvas. And when you have that sort of violation, the officer has a probable cause to search within a vehicle, any location which is where this improperly stored canvas could be. And that's what this violation is. The improper storage of raw canvas is accessible here. It was improperly stored here, is improperly stored within these packaging that was hidden underneath the carpeting in the front seat well. Because the front seat well underneath the co-defendant's feet is also a place that's accessible to the passenger and someplace that any raw canvas should not be stored. Well, it would be unusual to store cannabis in a postal envelope, wouldn't it? Yes, it would be very unusual to be violating the law actually, because it shouldn't be stored there. It needs to be an accessible location and also within a properly sealed container. Do you think that the officer could have gotten a warrant for the envelope based on what he knew? I cannot speculate as to what the officer could have done at that point in time. Well, I'm asking for your opinion. It's really my opinion that the officer had a probable cause to search himself so he did not need to take the time to get a warrant. My question is based on what he knew, do you think he could have gone to a judge and gotten a warrant? I would say yes, he could have gotten a warrant instead of taking a search based on probable cause. That's always an option. Do you have any more questions regarding these issues or any of the other issues in the briefing? Okay, Justice Schorler? Yeah, one more question. I asked this as well before. If there's an open container of alcohol in the backseat of a car, it's not accessible, but it's open. Does that give rise to probable cause to search an entire vehicle? I believe so. I'm not as familiar with the open container laws, but I think the violation of that is the open container itself and not necessarily the accessibility of the open container. So it's a slightly different statute in that situation. So I believe yes. All right, thank you. Justice Moore? No questions. Okay, thank you, Mr. Taylor. Mr. Jalil? May I proceed, Your Honor? Yes. Thank you. The record is clear that there is zero testimony given by the officer that he felt unsafe in this situation. So officer safety cannot be a justification. But even if the officer was allowed to conduct a pat-down for officer safety, it would be exclusively for weapons or things that could be used as weapons. Here, the officer knew immediately that there was cash money in his pocket. And then on top of that, the officer reaches inside his pocket and removes it, all while ordering Mr. Woolfolk to keep his hands in the air. And from the record, it seems that the money was never returned. Oh, here, the officer takes the money out and hands it right back to him. That's not what happened here. And also, again, as far as the factual record, no, the officer never told Mr. Woolfolk or Ms. Beard that he smelled alcohol or he smelled cannabis inside their vehicle at any time that he was interacting with them. The first time that there is a mention of cannabis is when he's talking to the canine officer who's on scene and he tells them that the vehicle reeks of cannabis, which that testimony has to be taken with an entire grain of salt here when there was a minuscule amount of cannabis found. Certainly a minuscule amount of cannabis wouldn't reek like the officer embellished in his testimony here. And then in regards to the state's concession that Mr. Woolfolk was in custody at the time that he was frisked, that's not what they argued in the trial court below. They argued that Mr. Woolfolk was not arrested until the postal envelope was open and the search was concluded. If the state would have conceded at trial that he was placed under, that he was in custody at that time and not free to leave, that would have changed the entire dynamic of this case. The argument that would have been raised below, the argument that would have been raised here, because at that time, what was there? There was a smell of unburned cannabis, which Redmond says in of itself is not a factor. He sees a dispensary container. That's it. That is not certainly at that point enough for a blanket search of the car. And to answer your question, Justice Cates, I don't believe that under that scenario, a magistrate would authorize a warrant. I think there would just need to be significantly more before a warrant is authorized simply because there's a dispensary container in the center council that doesn't lead to the conclusion that there's anything else in the car. And there was nothing that the officer discovered even before the frisk or after the frisk that leads to the conclusion that there would have been any evidence of contraband in this vehicle or evidence of a speeding violation. As I argued, all the officer was doing was prolonging this stop as long as he could to ask them questions, which was directly related to his drug interdiction training. He wasn't conducting a routine traffic stop. He had no interest in writing, doing a routine traffic stop because he testified he wasn't writing tickets in this case. And in other cases, in these scenarios, he wasn't even going to be pulling over people who were excessively speeding right in front of him. So the sole purpose of him being out there, what he testified and what he told Mr. Wofford was to conduct drug interdiction training. And- But let me stop you there. You mentioned before that the officer had embellished, I think was the word you used. Isn't it correct though, that the trial court specifically stated that they found the officer credible during the motion to suppress hearing? Yes, Your Honor. But I would argue that in the bifurcated standard, Your Honor, are to utilize here, that that finding was manifestly erroneous because there's nothing to support that this car reaped of marijuana. And as far as, there was a dog on the scene. The officer could have easily run a canine around it without violating anybody's Fourth Amendment rights. He could have ran the canine on the postal envelope and we wouldn't be in this situation. But it's the officer's decision to preemptively jump the gun essentially and do a search when he didn't have probable cause. And then on top of that, preemptively open the envelope when even if he had probable cause to search for accessible cannabis, he wouldn't have found accessible cannabis in there. So all of this, it was directly related to the police officers, how he conducted this investigation. And the reason why he conducted this investigation as he did was solely because he was not conducting a traffic stop. He was conducting a drug interdiction investigation. And that was the sole purpose of why he stopped Mr. Woolford. That was the sole purpose why he drove up next to him to see who was driving in this vehicle as opposed to stopping this vehicle right away. And the sole reason why he stopped somebody that was going at most six miles an hour over the speed limit on an interstate highway. Well, the motive for him stopping, the drug interdiction motive is okay under U.S. Supreme Court precedent. Yes, Your Honor. But this is why I asked you before, the video was not played during the motion to suppress. It was played at trial. The opinions that the officer gave and the testimony that he gave on cannabis was refuted by the video and he was not allowed to give the opinions during trial. So when he said during the motion to dismiss that he smelled the cannabis, but then the video shows that he doesn't say it till the end. There's some differences going on here. And I myself am not sure whether I can accept the opinions of the drug interdiction officer when they were suppressed at the trial. They weren't objected to during the motion. His credentials and his expertise were not objected to, but they were at trial and it was suppressed. I mean, they wasn't allowed to give all these opinions. So I'm not sure what to do with the trial court's finding on the motion to suppress. Do you have any help in that regard? Well, Your Honor, I believe Your Honors are able to look at the entire record. To make it for your de novo review, Your Honors are able to look at the entire record to make a determination as to whether the factual and credibility findings made by the trial court were manifestly erroneous. So I believe the fact that he testified to these other things that were not allowed to be testified to at trial in his drug interdiction, can play a part in the probable cause analysis in this case. But the issue is how much weight does it give and does his quote unquote drug interdiction testimony that he gave actually is contradicted by the indisputable video evidence in this case, which it clearly was. And based upon the inconsistencies in the videos and the deputy's testimony, I think Your Honors are free to rely on the video testimony in this case because it's indisputable. There is no issue as to what was said on the scene based upon the video and the interactions between the co-defendants and the arresting officer here. And we don't need to rely upon what his testimony actually was because we know what happened based upon the video. And that is more than sufficient to rely upon for the first part of the bifurcated analysis here and the second part. Okay. Justice Scholar, any other questions? No. Justice Moore? No other questions. Okay. Thank you both for your arguments here today. This matter will be taken under advisement and we will issue an order in due course. I appreciate your efforts.